UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PEDRO ARANA,

                         Petitioner,

       v.

WILLIAM BARR, Attorney General of the United States; KEVIN MCALEENAN, Acting Secretary of the U.S. Department of Homeland Security; MATTHEW ALBENCE, ACTING DIRECTOR, U.S. Immigration and Customs Enforcement; JAMES MCHENRY, Director, Executive Office of Immigration Review; THOMAS DECKER, New York Field Office Director for U.S. Immigration and Customs Enforcement,

                         Respondents.

**ORDER**

19 Civ. 7924 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Petitioner Pedro Arana has been detained by Immigration and Customs Enforcement ("ICE") since July 31, 2018. (Pet. (Dkt. No. 1) ¶¶ 2, 22-23) He brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, the All Writs Act, 28 U.S.C. § 1651, and Article I, Section 9, of the U.S. Constitution (id. ¶ 9), seeking an order providing him with a bond hearing. On March 15, 2020, Petitioner filed an emergency motion to expedite adjudication of the Petition given the risks posed to his health by the COVID-19 virus, which is present in the facility in which he is housed. (Dkt. No. 13)

        On March 22, 2020, this Court referred the Petition to Magistrate Judge Debra C. Freeman for a Report and Recommendation ("R&R"). (Dkt. No. 17) On March 27, 2020, Judge Freeman issued a 19-page R&R recommending that Petitioner be granted an expedited bond hearing before an immigration judge and that Petitioner be released from ICE custody pending

the bond hearing.  In the alternative, Judge Freeman recommends that the Court set a date certain by which time the bond hearing must occur, failing which Petitioner would be released.  (R&R (Dkt. No. 22) at 13-14 n.3)

On April 1, 2020, Respondents filed timely objections to the R&R.  Petitioner responded to those objections on April 2, 2020.  (Resp. Obj. (Dkt. No. 25); Pet. Opp. to Resp. Obj. (Dkt. No. 27))

For the reasons stated below, the Petition will be granted to the extent that Petitioner must receive a bond hearing by April 7, 2020.  If no bond hearing is conducted by that date, Petitioner is to be released from custody.

## BACKGROUND

I. **FACTS**

Petitioner is a 63-year-old lawful permanent resident of the United States.  (Pet. (Dkt. No. 1) ¶ 3)  He suffers from asthma.  (Pet. Mar. 15, 2020 Ltr. (Dkt. No. 13) at 1)  In recent years, he has also suffered from severe depression and auditory hallucinations, which has caused him to make "multiple attempts to take his [own] life."  (Pet. (Dkt. No. 1) ¶¶ 14-15)  In 2015, Petitioner started a fire at home in an attempt to burn himself to death.  (Id. ¶ 14)  When Petitioner realized that the fire was "putting others in his home in danger, he called for help and told others to leave the house."  (Id.)  Before his suicide attempt, Petitioner had been "experiencing auditory hallucinations, including negative voices inside his head."  (Id. ¶ 15)

As a result of this incident, Petitioner was arrested, and on November 9, 2016, he pleaded guilty to attempted arson in the third degree, in violation of New York Penal Law § 110-150.10.  (Id. ¶ 16) During the plea proceeding, the state court judge noted that it was "clear" that "this house was set on fire because [Petitioner] attempted to take his life and that once he

realized that[,] he was responsible for getting everybody else out of the house so no one was hurt." (Nov. 9, 2016 Plea Tr. (Dkt. No. 3-1) at 7; see Pet. (Dkt. No. 1) ¶ 17)[1] The state court also noted that a psychiatric examiner had concluded that a mental disease or defect explained Petitioner's actions. (Nov. 9, 2016 Plea Tr. (Dkt. No. 3-1) at 7; see Pet. (Dkt. No. 1) ¶ 17) Finally, the court noted that Petitioner was 61 years old and that – other than a 1996 DWI conviction – Petitioner had "never had any problems with the criminal justice system at all." (Nov. 9, 2016 Plea Tr. (Dkt. No. 3-1) at 10; see Pet. (Dkt. No. 1) ¶ 17)

On March 20, 2018, after observing that Petitioner had done "remarkably well" since his November 9, 2016 guilty plea, the court sentenced Petitioner to time served and five years' probation. (Mar. 20, 2018 Sentencing Tr. (Dkt. No. 3-2) at 4-5; see Pet. (Dkt. No. 1) ¶ 18)

On July 31, 2018, ICE arrested Petitioner and placed him in removal proceedings. (Pet. (Dkt. No.1) ¶¶ 2, 22-23) Petitioner has been detained since then – more than twenty months – without a bond hearing. (Id. ¶¶ 22, 41)

On April 10, 2019, the Appellate Division, Second Department, granted Petitioner's motion to file a direct appeal concerning his arson conviction. (Id. ¶ 19) Petitioner intends to argue on appeal that his guilty plea is invalid because (1) his mental health conditions precluded him from entering a knowing, voluntary, and intelligent guilty plea; and (2) he was not properly advised of the immigration consequences of his plea. (Id. ¶ 20)

## II.   PROCEDURAL HISTORY

On August 23, 2019, Petitioner filed a petition under 28 U.S.C. § 2241 for a bond hearing, arguing that Respondents' failure to provide him with such a hearing violated his due

---

[1] Citations to page numbers refer to the pagination generated by this District's Electronic Case Files ("ECF") system.

3

process rights under the Fifth Amendment to the U.S. Constitution. (Pet. (Dkt. No. 1)) Respondents opposed the Petition on September 19, 2019. (Resp. Opp. (Dkt. No. 10)) On March 15, 2020, Petitioner filed an "emergency" letter motion with this Court, seeking expedited adjudication of the Petition in light of the "exigent circumstances" presented by the COVID-19 outbreak. (Pet. Mar. 15, 2020 Ltr. (Dkt. No. 13)) In his emergency motion, Petitioner seeks an order directing that (1) he receive an expedited bond hearing; (2) that the bond hearing be conducted before this Court and not before an immigration judge; and (3) that he be released pending the bond hearing. (Id.) Respondents opposed that motion on March 20, 2020. (Resp. Mar. 20, 2020 Ltr. (Dkt. No. 15))

This Court referred the Petition to Magistrate Judge Freeman for an R&R on March 22, 2020. (Dkt. No. 17) On March 25, 2020, Petitioner requested oral argument, and Judge Freeman heard argument that day. (Dkt. No. 18) On March 27, 2020, Judge Freeman issued a thorough and well-reasoned 19-page R&R recommending that the Petition be granted.

### III.   JUDGE FREEMAN'S REPORT AND RECOMMENDATION

#### A.   Legal Standard

Judge Freeman begins by noting that, under 28 U.S.C. § 2241, "district courts may grant a writ of habeas corpus to any petitioner 'in custody in violation of the Constitution or laws or treaties of the United States.'" (R&R (Dkt. No. 22) at 7 (quoting 28 U.S.C. § 2241(c)(3))) "The jurisdiction conferred by Section 2241 includes the power to grant a writ to non-citizens who are detained in violation of the Constitution." (Id. (citing Demore v. Kim, 538 U.S. 510, 516 (2003)) see also Hernandez v. Decker, No. 18 Civ. 5026 (ALC), 2018 WL 3579108, at *3 (S.D.N.Y. July 25, 2018) ("Under this provision, federal courts are empowered to hear claims by non-citizens challenging the constitutionality of their detention.").

4

Judge Freeman further notes that the "due process rights of non-citizens detained during removal proceedings pursuant to 8 U.S.C. § 1226(c) include the right to be free from indefinite or unreasonably prolonged detention." (Id. at 8 (citing Lora v. Shanahan, 804 F.3d 601, 613 (2d Cir. 2015), cert. granted, judgment vacated, 138 S. Ct. 1260 (2018))[2] In considering whether a petitioner's detention has been unreasonably prolonged – thereby entitling a petitioner to a bond hearing – courts in this District typically consider the so-called Sajous factors: (1) "the length of time the alien has already been detained"; (2) "whether the alien is responsible for the delay"; (3) whether the detained alien has asserted defenses to removal"; (4) "whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable"; and (5) "whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention." (R&R (Dkt.

---

[2] In Lora v. Shanahan, the Second Circuit held that indefinite detention without a bond hearing under Section 1226(c) violates due process. Lora, 804 F.3d at 613. The Circuit further held that, "in order to avoid the constitutional concerns raised by indefinite detention, an immigrant detained pursuant to section 1226(c) must be afforded a bail hearing before an immigration judge within six months of his or her detention." Id. at 616. As Judge Freeman acknowledges in her R&R (see (Dkt. No. 22) at 8 n.2), however, in Jennings v. Rodriguez, 138 S. Ct. 830, 846 (2018), the Supreme Court observed that "§ 1226(c) does not on its face limit the length of the detention it authorizes," and the Supreme Court later vacated Lora and remanded for further consideration in light of Jennings. See Shanahan v. Lora, 138 S. Ct. 1260, 1260 (2018).

This Court notes that Jennings has not rendered the reasoning of Lora irrelevant. "Lora v. Shanahan's reasoning – including that indefinite detention under Section 1226(c) without a bond hearing violates due process – remains 'strong persuasive authority.' . . . Post-Jennings v. Rodriguez, courts in the Southern District of New York have concluded that aliens subject to mandatory detention under Section 1226(c) are entitled to bond hearings 'when their continued detention becomes unreasonable and unjustified.'" Dukuray v. Decker, No, 18 Civ. 2898 (VLB), 2018 WL 5292130, at *3 (S.D.N.Y. Oct. 25, 2018), at *3 (quoting first Sajous v. Decker, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *7 (S.D.N.Y. May 23, 2018), appeal withdrawn, 2019 WL 4137822 (2d Cir. May 7, 2019); then Brissett v. Decker, 324 F. Supp. 3d 444, 451 (S.D.N.Y. 2018))); see R&R (Dkt. No. 22) at 8 n.2, 11-12 (discussing weight that courts continued to afford to Lora v. Shanahan after Jennings v. Rodriguez)

No. 22) at 8 (quoting Sajous v. Decker, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018), appeal withdrawn, 2019 WL 4137822 (2d Cir. May 7, 2019))

Judge Freeman also notes that "[f]ederal courts possess the 'inherent authority to admit to bail individuals properly within their jurisdiction'" (id. at 8 (quoting Mapp v. Reno, 241 F.3d 221, 226 (2d Cir. 2001)), but acknowledges that – in the habeas context – "the power to grant bail is a 'limited one, to be exercised in special cases only.'" (Id. at 8-9 (quoting Mapp, 241 F.3d at 226)) Indeed, the Second Circuit has observed that

> the standard for bail pending habeas litigation is a difficult one to meet: The [p]etitioner must demonstrate that the habeas petition raises substantial claims and that extraordinary circumstances exist that make the grant of bail necessary to make the habeas remedy effective.

(Id. at 9 (quoting Mapp, 241 F.3d at 226))

Courts consider three factors in determining whether the Mapp standard is met: "(1) whether substantial claims are set forth in the habeas corpus petition; (2) whether the petitioner has demonstrated a likelihood of success on the merits of his or her petition; and (3) whether there are extraordinary circumstances attending the petitioner's situation which would require release on bail in order to make the writ of habeas corpus effective." (Id. (citing Boddie v. N.Y. State Div. of Parole, No. 08cv9287 (LAP) (DF), 2009 WL 1531595 at *1 (S.D.N.Y. May 28, 2009) (reciting three factors); Samuel v. INS, No. 01cv3413 (LTS) (RLE), 2005 WL 120221, at *8 (S.D.N.Y. Jan. 20, 2005) (same); Defino v. Thomas, No. 02cv7413 (RWS), 2003 WL 40502, at *2 (S.D.N.Y. Jan. 2, 2003))

Judge Freeman found that case law was "sparse" regarding the "authority of federal courts to release a habeas petitioner under Mapp where," as here, "the petitioner is held in mandatory detention pursuant to 8 U.S.C. § 1226(c)," but notes that "courts in this District that have considered such petitions have found that federal courts have the authority to do so." (Id. at

6

9 (citing Kiadii v. Decker, No. 18cv1584 (AT), 2018 WL 10456549, at *1-2 (S.D.N.Y. Mar. 2, 2018)))

B.     Analysis

Judge Freeman concludes that all five Sajous factors weigh in Petitioner's favor. As an initial matter, Petitioner has been detained approximately 20 months without a bond hearing. (R&R (Dkt. No. 22) (citing Pet. (Dkt. No. 1) ¶ 22)) Because the duration of Petitioner's detention is the "'most important factor'" in considering whether Petitioner has been afforded due process, this factor weighs heavily in Petitioner's favor. (Id. (quoting Sajous, 2018 WL 2357266, at *10); citing Reid v. Decker, No. 19cv8393 (KPF), 2020 WL 996604, at *5 (S.D.N.Y. Mar. 2, 2020) (detention for one year without a bond hearing is unreasonable); Vallejo v. Decker, No. 18cv5649 (JMF), 2018 WL 3738947, at *2-4 (S.D.N.Y. Aug. 7, 2018) (seventeen months without a bond hearing violates due process)))

As to Petitioner's responsibility for the delay, Judge Freeman notes that "a petitioner is entitled to raise meritorious defenses, and to the extent any adjournments sought here were for any significant periods of time, the record reflects that the resulting delays were, at most, attributable to both parties." (Id. at 12) There is no evidence that Petitioner has sought to "game the system," Sajous, 2018 WL 2357266, at *10, or to prolong his detention in order to secure a bond hearing. Judge Freeman concludes that this factor also favors Petitioner. (R&R (Dkt. No. 22) at 12)

As to defenses to removal, Petitioner claims that he has valid defenses supported by Board of Immigration Appeals precedent, and Respondents have not argued otherwise.[3] (Id.

---

[3] In any event, as the R&R notes, courts "need not inquire into the strength of [a petitioner's] defenses." Sajous, 2018 WL 2357266, at *11.

7

(citing Pet. (Dkt. No. 1) ¶¶ 30-33, 49; Pet. Reply (Dkt. No. 11), at 6)  This factor likewise favors Petitioner.  (Id.)

As to whether Petitioner's period of detention exceeds the time he served in prison for the crime that allegedly renders him removable, Petitioner was sentenced to five years' probation on the arson charge but has spent twenty months in detention in connection with removal proceedings.  (Id.)

As to "whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention," Sajous, 2018 WL 2357266, at *11, Petitioner is being detained at the Bergen County Jail.  In addition to immigration detainees, that facility holds "pre-trial male and female adult inmates whose incarceration is necessary to ensure a court appearance."  (R&R (Dkt. No. 22) at 13)  Judge Freeman concluded that this factor likewise favors Petitioner.  (Id. (quoting Sajous, 2018 WL 2357266, at *11 (where detention facility is "an actual jail," this factor favors petitioner))

Because all of the Sajous factors weigh in Petitioner's favor, Judge Freeman recommends that the Petition be granted and that Petitioner be afforded a bond hearing on the earliest feasible date.  (Id.)

With respect to the bond hearing, Judge Freeman recommends that this Court direct the presiding immigration judge to consider less restrictive alternatives to detention as well as Petitioner's ability to finance a bond.  (Id. at 14-15).  Finally, Judge Freeman recommends that this Court direct that, at the bond hearing, Respondents be required to demonstrate by "clear and convincing evidence" that Petitioner's continued detention is necessary and lawful.  (Id. at 15 (citing DeJesus Nunez v. Decker, No. 18 Civ. 3939 (PGG), Dkt. No. 31 at 9 n.9 ("'At [P]etitioner's bond hearing, in order to justify [his] continued detention, [Respondents] must

8

demonstrate by clear and convincing evidence that petitioner poses a risk of flight or a danger to the community.'") (quoting Dukuray v. Decker, No. 18 Civ. 2898 (VB), 2018 WL 5292130, at *5 (S.D.N.Y. Oct. 25, 2018)))

Judge Freeman then analyzes the Mapp factors to determine whether Petitioner should be released from custody pending the bond hearing. (Id. at 15-16) As for the first two Mapp factors – whether the petition sets forth substantial claims and is likely to succeed on the merits – Judge Freeman notes that she has already determined that the Petition is meritorious and should be granted.

As for the third factor – whether extraordinary circumstances require release on bail to make the writ effective – Judge Freeman finds that this factor is satisfied given (1) the COVID-19 outbreak and its presence in the Bergen County Jail; (2) Petitioner's underlying health conditions, which include asthma; and (3) the length of time it would take to schedule a bail hearing. (Id. at 16) Respondents have confirmed that at least one detainee at the Bergen County Jail has been diagnosed with COVID-19 (id. at 17), and Petitioner has represented that a staff member at the Jail has also tested positive for the virus. (Id.) Judge Freeman concludes that the evidence "suggests that Petitioner's exposure may be imminent." (Id. (citing Basank v. Decker, No. 20 CIV. 2518 (AT), 2020 WL 1481503, at *5 (S.D.N.Y. Mar. 26, 2020) ("The spread of COVID-19 is measured in a matter of a single day – not weeks, months, or years . . . ."))) While Respondents represent that ICE is acting to "limit the spread of the virus – including the provision of soap and hand sanitizer and the isolation of detainees who report symptoms," Judge Freeman finds that these measures are "'patently insufficient' to prevent the virus's spread, without guarantees that the detention facilities are equipped to enforce the

9

recommended social distancing measures recommended by the CDC." (Id. (quoting Basank, 2020 WL 1481503, at *13))

Lastly, Judge Freeman notes that the parties' submissions indicate that bond hearings in immigration court – when they occur at all – are proceeding at a significantly diminished rate, given staff shortages and court closures due to the virus outbreak. (Id.) Judge Freeman concludes that there is not "a reasonable likelihood, let alone a guarantee, that Respondents, even if ordered to do so to remedy a due process violation, would reasonably be able to afford Petitioner a bond heading in a truly expedited manner." (Id. at 17-18) Accordingly, Judge Freeman recommends that Petitioner be released pending his bond hearing. (Id. at 18) In the alternative, Judge Freeman recommends that the Court either (1) set a date certain by which time the bond hearing must be conducted, failing which Petitioner will be released without bond; or (2) that the Court conduct the bond hearing itself. (Id. at 14 n.3)

## IV. RESPONDENTS' OBJECTIONS

On April 1, 2020, Respondents submitted objections to Judge Freeman's R&R. (Resp. Obj. (Dkt. No. 25)) Respondents argue that the Sajous factors do not account for the Government's "weighty interest in detention of certain criminal aliens, such as [Petitioner]." (Id. at 25) Respondents further contend that, in any event, Judge Freeman's "analysis of those factors was flawed." (Id.)

With respect to the first two Sajous factors – the length of detention and Petitioner's responsibility for it – Respondents note that Petitioner's detention was prolonged in part by his counsel's adjournment requests. (Id. at 27) As to the third, fourth, and fifth Sajous factors, Respondents contend that these factors "simply are not relevant . . . for considering whether [Petitioner's] detention is constitutional." (Id. at 28)

As to Judge Freeman's recommendations concerning the bond hearing itself, Respondents argue that they should not "bear the burden of proving that an alien is a flight risk or a danger, much less by clear and convincing evidence." (Id.) Respondents further contend that the immigration judge should not be "require[d] . . . to consider ability to pay and alternatives to detention." (Id. at 30)

As to Judge Freeman's recommendation that, pursuant to Mapp, Petitioner be released pending a bond hearing, Respondents argue that Mapp does not apply to detainees, like Petitioner, who are subject to mandatory detention under 8 U.S.C. § 1226(c). (Id. at 10-12) According to Respondents, even if Mapp applies, Petitioner has not satisfied Mapp's "extraordinary circumstances" requirement. (Id. at 12-17)

In Petitioner's April 2, 2020 response to Respondents' objections, he argues that the Court should overrule the objections and adopt Judge Freeman's R&R in its entirety. (Pet. Opp. to Resp. Obj. (Dkt. No. 27)) Petitioner contends that the "situation has only deteriorated in the days since the [R&R was issued]." (Id. at 2) Petitioner represents that "2 ICE detainees, 1 criminal detainee, 2 jail staff, and 2 other correctional officers" at the Bergen County Jail have now tested positive for COVID-19, and five "additional ICE detainees are suspected of COVID-19 [infection] and [have been] quarantined." (Id. at 6)[4] Petitioner again requests immediate release without bond, and "only as a last resort, . . . that [the Court] structure its decision to require a bond hearing by a date certain in immigration court." (Id. at 2 n.1)

---

[4] In support of these claims, Petitioner cites an affidavit filed in Darboe v. Decker, Case No. 20 Civ. 2292 (D.N.J.), currently pending in the District of New Jersey. (Pet. Opp. to Resp. Obj. (Dkt. No. 27) at 6) This filing is not available to the Court on PACER.

11

# DISCUSSION

I.  **LEGAL STANDARD**

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where a timely objection has been made to a magistrate judge's recommendation, the district court judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. However, "[o]bjections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review.'" Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (quoting Vega v. Artuz, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)) (alteration in Phillips). "To the extent . . . that the party . . . simply reiterates the original arguments, [courts] will review the Report strictly for clear error." Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., 07 Civ. 6865 (LTS), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citing Pearson-Fraser v. Bell Atl., No. 01 Civ. 2343(WK), 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003); Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y.1992)); see also Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are 'merely perfunctory responses,' . . . 'rehashing . . . the same arguments set forth in the original petition.'") (citing Vega, 2002 WL 31174466, at *1; Greene v. WCI Holdings, 956 F. Supp. 509, 513 (S.D.N.Y. 1997)).

For portions of the R&R to which no timely objection is made, review is limited to a consideration of whether there is any "'clear error on the face of the record'" that precludes

acceptance of the recommendations. Wingate v. Bloomberg, 2011 WL 5106009, at *1 (S.D.N.Y. Oct. 27, 2011) (quoting Fed. R. Civ. P. 72(b) advisory committee note; citing Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) ("To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record.")).

## II. ANALYSIS

This Court agrees with Judge Freeman that the Sajous factors overwhelmingly weigh in Petitioner's favor. Petitioner's 20-month detention without a bond hearing is unreasonable. Sajous, 2018 WL 2357266, at *10 (eight months without a bond hearing unconstitutional); Dukuray, 2018 WL 5292130, at * 4 (ten months' detention without a bond hearing unreasonable). Accordingly, this factor weighs in favor of Petitioner.

Although Petitioner's adjournment requests have prolonged his detention to some extent, much of the delay is attributable to factors outside Petitioner's control, including a three-month delay before counsel was appointed (Mascia Decl. (Dkt. No. 9) ¶¶ 8, 10), and a mumps outbreak at the Bergen County Jail that impeded counsel's ability to communicate with Petitioner for several weeks. (Pet. (Dkt. No. 1) ¶ 35) As Judge Freeman found, both sides share responsibility for the delay. (R&R (Dkt. No. 22) at 12) Accordingly, this factor is neutral.

As to whether Petitioner has defenses to removal, he has asserted such, and this Court "need not inquire into the strength of [those] defenses," Sajous, 2018 WL 2357266, at *11. This factor thus weighs in Petitioner's favor.

There is also no question that Petitioner's period of immigration detention exceeds the term of imprisonment he received for his underlying arson offense. This factor thus favors Petitioner.[5]

Finally, Petitioner is being held in a facility that houses individuals facing criminal charges. Accordingly, the fifth factor also favors Petitioner.

Respondents do not dispute that the Sajous factors overwhelmingly favor Petitioner. Instead, they contend that the Court should not apply the Sajous factors. (Resp. Obj. (Dkt. No. 25) at 25) These factors are derived from Supreme Court precedent, however. See Lett v. Decker, 346 F. Supp. 3d 379, 387 (S.D.N.Y. 2018) ("In Sajous v. Decker, the court examined several factors 'derived from the Supreme Court's decisions in [Zadvydas v. Davis, 533 U.S. 678 (2001)] and [Demore v. Kim, 538 U.S. 510, 516 (2003)] and adopted by courts in this circuit and elsewhere when determining whether an alien's detention has become unreasonable.'") (quoting Sajous, 2018 WL 2357266, at *10). This Court has previously adopted the Sajous analysis, see DeJesus Nunez v. Decker, No. 18 Civ. 3939 (PGG), Dkt. No. 31, at 7-9 (S.D.N.Y. May 10, 2019), and other courts in this District have "'overwhelmingly adopted' Sajous' multi-factor test to determine the constitutional bounds of detention without a bond hearing." Cruz v. Decker, No. 18 Civ. 9948 (GBD) (OTW), 2019 WL 7572975, at *5 (S.D.N.Y. Aug. 27, 2019), report and recommendation adopted, 2019 WL 6318627 (S.D.N.Y.

---

[5] As noted above, Petitioner was sentenced to five years' probation. (R&R (Dkt. No. 22) at 3) The record is not clear as to what amount of time Petitioner was in custody prior to sentencing. Respondents have not challenged Judge Freeman's finding that Petitioner's period of detention in ICE custody exceeds whatever period of time he was incarcerated for the arson offense, however. Accordingly, the Court accepts Judge Freeman's finding on this point. (Resp. Obj. (Dkt. No. 25) at 28) see Hafford v. Aetna Life Ins. Co., No. 16-CV-4425 (VEC)(SN), 2017 WL 4083580, at *1 (S.D.N.Y. Sept. 13, 2017) ("The parties do not object to the Magistrate Judge's . . . recitation of the facts of this case, and the Court adopts them in full.").

Nov. 26, 2019) (quoting Dukuray, 2018 WL 5292130, at *3-4) Accordingly, this Court rejects Respondents' argument that it should forego the well established Sajous analysis. The Petition will be granted to the extent that Petitioner must receive a bond hearing.

At that bond hearing, the immigration judge must consider less restrictive alternatives to detention as well as Petitioner's ability to finance any bond, and Respondents will bear the burden of justifying Petitioner's continued detention by clear and convincing evidence. "Myriad courts in this Circuit . . . have . . . ordered the Government to bear the burden by clear and convincing evidence, and directed immigration judges to consider alternatives to detention." Coronel v. Decker, No. 20-CV-2472 (AJN), 2020 WL 1487274, at *6 (S.D.N.Y. Mar. 27, 2020); see also Joseph v. Decker, No. 18-CV-2640 (RA), 2018 WL 6075067, at *12 (S.D.N.Y. Nov. 21, 2018), appeal withdrawn, 2019 WL 3334802 (2d Cir. May 1, 2019) (noting that the 'overwhelming majority' of courts have concluded . . . that . . . the government must bear the burden of proof at a bond hearing by clear and convincing evidence, to ensure the preservation of the detainees' fundamental liberty interests") (quoting Martinez v. Decker, No. 18-CV-6527 (JMF), 2018 WL 5023946, at *5 (S.D.N.Y. Oct. 17, 2018), appeal withdrawn, 2019 WL 2524182 (2d Cir. May 9, 2019)). Courts in this Circuit also routinely require immigration judges to consider Petitioner's ability to finance a bond. See, e.g., Reid, 2020 WL 996604, at *12 ("The Court agrees with its sister courts that have concluded that due process requires the [immigration judge] to consider ability to pay and alternative conditions of release in setting bond.") (collecting cases); Genus v. Decker, No. 19-CV-10647 (JPO), 2020 WL 1434934, at *2 (S.D.N.Y. Mar. 23, 2020) ("[T]he immigration judge must 'consider ability to pay and alternative conditions of release in setting bond.'") (quoting Hernandez, 2018 WL 3579108, at *12).

Judge Freeman recommends that this Court release Petitioner immediately pending a bond hearing, finding that "extraordinary circumstances" exist under Mapp that warrant such relief. (R&R (Dkt. No. 22) at 16) According to Judge Freeman, Petitioner's immediate release is justified given (1) the threat that COVID-19 presents to Petitioner's health; and (2) that bond hearings are proceeding at a "significantly diminished rate" due to staff shortages and court closures related to the COVID-19 outbreak. (Id. at 17) Even if the Court were to order Respondents to schedule a bond hearing expeditiously, Judge Freeman believes that there is not "a reasonable likelihood, let alone a guarantee," that a bond hearing would take place "in a truly expedited manner." (Id. at 17-18)

Judge Freeman's concerns about delay appear to relate to staff shortages at the Varick Street Immigration Court in Manhattan and a temporary closure of that facility after a staff member tested positive for COVID-19. (Pet. Ltr. (Dkt. No. 19) at 3) In their objections, however, Respondents note that the Executive Office for Immigration Review recently instituted a plan to conduct bond hearings at the Varick Street facility by videoconference. (Resp. Obj. (Dkt. No. 25) at 16) The hearings will be conducted by immigration judges at the Fort Worth Immigration Adjudication Center. (Id.) There is some evidence that hearings can be expeditiously conducted. On March 26, 2020, Judge Daniels ordered a bond hearing to occur by April 3, 2020, see Jovel, 2020 WL 1467397, at *2 (S.D.N.Y. Mar. 26, 2020), and a hearing was scheduled for March 31, 2020. See Jovel, 2020 WL 1539282, at *1 (S.D.N.Y. Mar. 31, 2020) ("This Court understands that a bond hearing is now scheduled for today, March 31, 2020.").[6]

---

[6] It is also worth noting that Respondents have acted in good faith to help ensure the expeditious resolution of this matter by filing objections to Judge Freeman's R&R only five days after it was issued – earlier than the seven-day period to which the parties had stipulated. (R&R (Dkt. No. 22) at 19)

16

Having considered all the circumstances, the Court will order Respondents to conduct a bond hearing for Petitioner by April 7, 2020, failing which Petitioner is to be immediately released on his own recognizance. See Jovel, 2020 WL 1467397, at *2 (ordering that petitioner at risk of COVID-19 infection "be released on his own recognizance by April 3, 2020, . . . unless Respondents provide Petitioner with a bond hearing by that date").

Petitioner also notes that the COVID-19 outbreak has made it difficult for attorneys to communicate with clients. (Pet. Opp. to Resp. Obj. (Dkt. No. 27) at 6; Durkin Decl. (Dkt. No. 27-1) ¶¶ 2, 4) To address this issue, the Court will order Respondents to ensure that Petitioner has an opportunity to speak with counsel in person or over the telephone, in private, for a reasonable amount of time – and in any event, not less than one hour – before any hearing.

## **CONCLUSION**

Judge Freeman's R&R (Dkt. No. 22) is adopted to the extent set forth above. Respondents will either produce Petitioner before an Immigration Judge by **April 7, 2020** for an individualized bond hearing or release him on his own recognizance that day. Prior to any bond hearing, Respondents will ensure that Petitioner has an opportunity to speak with counsel in person or by telephone, in private, for not less than one hour. At any bond hearing, "'[Respondents] must demonstrate by clear and convincing evidence that petitioner poses a risk of flight or a danger to the community." Dukuray, 2018 WL 5292130, at *5 (citing Martinez, 2018 WL 5023946, at *5). The immigration judge must also consider less restrictive alternatives

to detention as well as Petitioner's ability to finance a bond.  See Jovel, 2020 WL 1502038, at *10 (S.D.N.Y. Mar. 24, 2020) ("'the Constitution compels' consideration of ability to pay and alternatives to detention") (quoting Hernandez, 2018 WL 3579108, at *12).

Dated: New York, New York
April 3, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge