UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEDRO ARANA,<br><br>                              Petitioner,<br><br>             v.<br><br>WILLIAM BARR, Attorney General of the<br>United States; KEVIN MCALEENAN,<br>Acting Secretary of the U.S. Department of<br>Homeland Security; MATTHEW<br>ALBENCE, ACTING DIRECTOR, U.S.<br>Immigration and Customs Enforcement;<br>JAMES MCHENRY, Director, Executive<br>Office of Immigration Review; THOMAS<br>DECKER, New York Field Office Director<br>for U.S. Immigration and Customs<br>Enforcement,<br><br>                              Respondents. | **ORDER**<br><br>19 Civ. 7924 (PGG) (DCF) |

PAUL G. GARDEPHE, U.S.D.J.:

               Petitioner Pedro Arana has been detained by Immigration and Customs

Enforcement ("ICE") since July 31, 2018.  (Pet. (Dkt. No. 1) ¶¶ 2, 22-23)  On August 23, 2019,

he filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, the All Writs Act, 28

U.S.C. § 1651, and Article I, Section 9, of the U.S. Constitution (id. ¶ 9), seeking an order

providing him with a bond hearing.  On April 3, 2020, the Court granted the Petition to the

extent that it ordered Respondents to produce Petitioner before an Immigration Judge by April 7,

2020 for an individualized bond hearing, or release him on his own recognizance.  (Apr. 3, 2020

Order (Dkt. No. 28))  This Court further ordered that, at the bond hearing, Respondents would be

required to demonstrate by clear and convincing evidence that Petitioner poses a risk of flight or

a danger to the community, and that the Immigration Judge would be required to consider alternatives to detention.  (Id. at 15-18)[1]

A bond hearing took place before Immigration Judge Brian Sardelli on April 7, 2020.  Judge Sardelli denied bond from the bench after finding that Petitioner presented a danger to the community.  (Bond Hearing Tr. (Dkt. No. 36-1) at 19)  On April 15, 2020, Judge Sardelli issued a written order memorializing his findings.  (Apr. 15, 2020 Order (Dkt. No. 44-1))

Petitioner now moves to enforce this Court's April 3, 2020 Order, arguing that Judge Sardelli did not apply the "clear and convincing evidence" standard of proof, or consider alternatives to detention.  (Pet. Br. (Dkt. No. 30) at 4-5; see also Pet. Supp. Br. (Dkt. No. 47) at 4-14)  Respondents oppose Petitioner's motion.  (Resp. Opp. (Dkt. No. 48))  For the reasons set forth below, Petitioner's motion will be denied.

## BACKGROUND

### I.    FACTS[2]

Petitioner is 64 years old and has been a permanent resident of the United States since 2005.  (Pet. (Dkt. No. 1) ¶¶ 3, 11; Vecchione Decl. (Dkt. No. 31) at 19)  He suffers from asthma.  (Mar. 15, 2020 Pet. Ltr. (Dkt. No. 13) at 1)  In recent years, he has also suffered from severe depression and auditory hallucinations, which have caused him to make "multiple attempts to take his [own] life."  (Pet. (Dkt. No. 1) ¶¶ 14-15)  In 2015, Petitioner started a fire at home in an attempt to burn himself to death.  (Id. ¶ 14)  When Petitioner realized that the fire was "putting others in his home in danger, he called for help and told others to leave the house."

---

[1]  Citations to page numbers refer to the pagination generated by this District's Electronic Case Files ("ECF") system.

[2]  The following facts are drawn from this Court's April 3, 2020 Order (Dkt. No. 28).

(Id.)  Before his suicide attempt, Petitioner had been "experiencing auditory hallucinations, including negative voices inside his head."  (Id. ¶ 15)

Petitioner was arrested as a result of this incident, and on November 9, 2016, he pleaded guilty to attempted arson in the third degree, in violation of New York Penal Law § 110-150.10.  (Id. ¶ 16)  During the plea proceeding, the state court judge noted that it was "clear" that "this house was set on fire because [Petitioner] attempted to take his life and that once he realized that[,] he was responsible for getting everybody else out of the house so no one was hurt."  (Nov. 9, 2016 Plea Tr. (Dkt. No. 3-1) at 7; see Pet. (Dkt. No. 1) ¶ 17)  The state court judge also noted that a psychiatrist had concluded that a mental disease or defect explained Petitioner's actions.  (Nov. 9, 2016 Plea Tr. (Dkt. No. 3-1) at 7; see Pet. (Dkt. No. 1) ¶ 17) Finally, the court noted that Petitioner was 61 years old and that – other than a 1996 DWI conviction – Petitioner had "never had any problems with the criminal justice system at all." (Nov. 9, 2016 Plea Tr. (Dkt. No. 3-1) at 10; see Pet. (Dkt. No. 1) ¶ 17)

On March 20, 2018, after observing that Petitioner had done "remarkably well" since his November 9, 2016 guilty plea, the court sentenced Petitioner to time-served and five years' probation.  (Mar. 20, 2018 Sentencing Tr. (Dkt. No. 3-2) at 4-5; see Pet. (Dkt. No. 1) ¶ 18)

On July 31, 2018, ICE arrested Petitioner and placed him in removal proceedings. (Pet. (Dkt. No.1) ¶¶ 2, 22-23)  Petitioner has been detained by ICE since then.  (Id. ¶¶ 22, 41)

On April 10, 2019, the Appellate Division, Second Department granted Petitioner's motion to file a direct appeal concerning his arson conviction.  (Id. ¶ 19)  Petitioner intends to argue on appeal that his guilty plea is invalid because (1) his mental health conditions precluded him from entering a knowing, voluntary, and intelligent guilty plea; and (2) he was not properly advised of the immigration consequences of his plea.  (Id. ¶ 20)

II.     **PROCEDURAL HISTORY**

     A.     **The Petition and this Court's April 3, 2020 Order**

On August 23, 2019, Petitioner filed a habeas petition under 28 U.S.C. § 2241 for a bond hearing, arguing that Respondents' failure to provide him with such a hearing violated his due process rights under the Fifth Amendment to the U.S. Constitution.  (Pet. (Dkt. No. 1))  On March 15, 2020, Petitioner filed an "emergency" letter motion with this Court, seeking expedited adjudication of the Petition in light of the "exigent circumstances" presented by the COVID-19 outbreak.  (Mar. 15, 2020 Pet. Ltr. (Dkt. No. 13))  In his emergency motion, Petitioner sought an order directing that (1) he receive an expedited bond hearing; (2) that the bond hearing be conducted before this Court and not before an immigration judge; and (3) that he be released pending the bond hearing.  (Id.)

This Court referred the Petition to Magistrate Judge Debra Freeman for a Report & Recommendation ("R&R") on March 22, 2020.  (Dkt. No. 17)  On March 27, 2020, Judge Freeman issued an R&R recommending that the Petition be granted, and that Petitioner be released from custody pending the bond hearing pursuant to Mapp v. Reno, 241 F.3d 221 (2d Cir. 2001).  (R&R (Dkt. No. 22) at 15-18)  In the alternative, Judge Freeman recommended that this Court set a date certain by which the bond hearing must be conducted, failing which Petitioner would be released on his own recognizance.  (Id. at 14 n.3)

On April 3, 2020, this Court adopted Judge Freeman's R&R to the extent that it ordered that a bond hearing be conducted by April 7, 2020, failing which Petitioner was to be released from custody.  (Order (Dkt. No. 28) at 17)  This Court further ordered that, at the bond hearing, Respondents would be required to "'demonstrate by clear and convincing evidence that petitioner poses a risk of flight or a danger to the community.'"  (Id.) (quoting Dukuray v.

Decker, No. 18 CV 2898 (VB), 2018 WL 5292130, at *5 (S.D.N.Y. Oct. 25, 2018))  The Court

also directed the Immigration Judge to consider alternatives to detention.  (Id. at 17-18 (citing

Jovel v. Decker, No. 20-CV-0308 (GBD)(SN), 2020 WL 1502038, at *10 (S.D.N.Y. Mar. 24,

2020), report and recommendation adopted, 2020 WL 1539282 (S.D.N.Y. Mar. 31, 2020)

("'[T]he Constitution compels' consideration of ability to pay and alternatives to detention.")

(quoting Hernandez v. Decker, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *12 (S.D.N.Y.

July 25, 2018))))

> **B.    Bond Hearing**

On April 7, 2020, Immigration Judge Sardelli conducted a bond hearing.[3]  (Bond

Hearing Tr. (Dkt. No. 36-1) at 2)  At the outset of the hearing, Judge Sardelli stated that he had

not received either side's evidentiary submission.  (Id. at 3-4, 6)  Judge Sardelli was also

unaware that the hearing had been scheduled pursuant to this Court's April 3, 2020 Order.  (Id. at

4, 6-7)

At the hearing, Respondents argued that Petitioner "is a danger to the

community," because he "has an aggravated felony charge of attempted arson from March

2018."  (Id. at 8)  While acknowledging that Petitioner "had mental health issues at the time of

the offense," Respondents contended that his "mental health" is irrelevant to the "particularly

serious crime analysis," and does not mitigate the danger that Petitioner "present[s] . . . to

others."  (Id.)  Respondents also cited Petitioner's 1996 DWI conviction – for which he received

a sentence of three years' probation – in support of their argument that Petitioner presents a

danger to the community.  (Id.)  Based on this evidence, Respondents argued that they had "met

---

[3]  The hearing was conducted by videoconference from the Immigration Court located in Fort
Snelling, Minnesota.  (Bond Hearing Tr. (Dkt. No. 36-1) at 2)

their burden of showing that [Petitioner] . . . pose[s] a danger to society if he is released from detention."  (Id.)  Respondents further argued that because Petitioner was "not likely" to prevail in the removal proceedings, he also "pose[s] a flight risk."  (Id.)

Petitioner argued that he did not pose either a danger to the community or a flight risk.  (Id. at 9)  Counsel described Petitioner as "a medically vulnerable" 64-year-old who had resided in the United States for more than thirty years.  (Id. at 9-10)  In 2014, he "was the victim of a violent sexual assault . . . by two men," which led him "to experience severe mental health symptoms including auditory hallucinations [and] suicidal ideation."  (Id. at 10)  These symptoms went "[u]ntreated" and "caused him to make several attempts on his own life[,] including the one that led to his 2015 arrest for attempted arson in the third degree."  (Id.) Counsel noted that the sentencing judge had found it unnecessary to "lock [Petitioner] up" for this offense, and had instead "sentenced him to five years of probation."  (Id.)  Petitioner's counsel further noted that the sentencing judge had taken "notice of [Petitioner's] lack of any serious criminal history before the incident."  (Id.)

Counsel stated that Petitioner was receiving "specialized attention by a social worker from the Legal Aid Society," and that he had "the support of his loving children and grandchildren . . . in Long Island."  (Id. at 10-11)  He had been "fully compliant with all of his mental health treatment while . . . in ICE custody," and his "depression medication . . . allowed him to abate all symptoms of auditory hallucinations."  (Id. at 11)  Petitioner's counsel noted that a "psychologist who recently evaluated [Petitioner] felt that he . . . is benefitting from his medication" and "would also benefit from psychotherapy."  (Id.)  Petitioner "wishes to pursue" psychotherapy but cannot do so while in detention.  (Id.)

Petitioner argued that Respondents had not met "their high burden of clear and convincing evidence" as to danger to the community, because they were merely "rely[ing] on a charging document" and a "RAP sheet." (Id.)  As to risk of flight, Petitioner argued that the immigration judge's removal order was likely to be reversed by the Board of Immigration Appeals ("BIA"), because BIA precedent favors Petitioner's position.  (Id. at 11-13)

Judge Sardelli directed the parties to email their written submissions, and he then took a recess to review these materials.[4]  (Id. at 14)  He stated that, after reviewing the parties' submissions, he would return to the bench and "make a decision," in order to comply with this Court's April 7, 2020 "deadline."  (Id. at 15)

After the recess, Judge Sardelli ruled as follows:

> [W]e heard argument this morning from both parties. . . . I was forwarded the written materials by both counsels via email. . . .  And so I'm ready to issue a decision in this case. . . .
>
> I'm going to go ahead and deny the bond in this case.  I'm concerned about the criminal conduct. . . .  I'm concerned that that would cause a danger to the community in this case.  I am cognizant that the burden was on the Government . . . and I have found that based on the evidence submitted and the arguments made, including . . . the indictment . . . and the [rap] sheet . . . , does cause me concern about the issue of dangerousness and dangers to the community.  So I will find that the . . . Government has met their burden on that issue.  And because I'm concerned about the issue of danger to the community, I'm going to go ahead and deny the bond in this case.  And I'll note all that for the record.  I will follow up with a written order in this case.

(Id. at 18-20)[5]

---

[4]  According to the parties, the recess lasted approximately two hours.  (Resp. Br. (Dkt. No. 37) at 12; Pet. Br. (Dkt. No. 30) at 6)

[5]  In citing Petitioner's "criminal conduct," Judge Sardelli referenced the indictment in the arson case and Petitioner's rap sheet.  (Resp. Exs. C, D (Dkt. No. 31) at 20-28)

### C.     Petitioner's Motion to Enforce

On April 7, 2020 – the day of the hearing – Petitioner moved to enforce this Court's April 3, 2020 Order.  (Pet. Br. (Dkt. No. 30))  Petitioner argues that Judge Sardelli violated this Court's Order by failing to consider alternatives to detention and by not requiring Respondents to prove by "clear and convincing" evidence that Petitioner is a danger to the community or a risk of flight.  (Id. at 6, 8 n.5, 10-12)  Given Judge Sardelli's alleged failure to comply with this Court's Order, Petitioner argues that he should be immediately released.  (Id. at 4)

Respondents contend that there was full compliance with this Court's April 3, 2020 Order:  the bond hearing was conducted by April 7, 2020, and at that hearing, Judge Sardelli applied the "clear and convincing" standard.  Respondents contend that Judge Sardelli was not required to consider alternatives to detention given his finding that Petitioner poses a danger to the community.  (Resp. Opp. (Dkt. No. 37) at 19, 26)

In an April 13, 2020 Order, this Court found that Judge Sardelli's bench ruling did not demonstrate full compliance with this Court's April 3, 2020 Order, noting that the bench ruling made no reference to the "clear and convincing" standard or to alternatives to detention.  (Apr. 13, 2020 Order (Dkt. No. 43) at 2-3)  Because Judge Sardelli had stated that a written order would follow, however, this Court stayed Petitioner's motion in anticipation of that written order.  (Id.)

### D.     Immigration Judge's April 15, 2020 Written Decision

In an April 15, 2020 order, Judge Sardelli explains in detail the reasoning underlying his April 7, 2020 bench ruling.  His decision reads as follows:

> [T]his Court conducted a bond redetermination hearing on April 7, 2020, and denied [Petitioner's] request for a change in custody status.  As the Court

explained orally during that hearing, the Court was issuing a summary order that day – given the deadline from the U.S. District Court – with a more thorough written order to follow.  The Court now explains its reasoning in further detail. . . .

In support of his request for bond, [Petitioner's] submissions included the following:  copies of the report and recommendation and the decision of the U.S. District Court in the Southern District of New York on [Petitioner's] petition for habeas corpus; a letter from a licensed social worker describing [Petitioner's] health conditions and plans for release; a letter from [Petitioner's] son explaining how he will provide support and accommodations for [Petitioner] if released; a letter from [Petitioner's] appellate attorney in his criminal case; a letter from an attorney attesting to the strength of the merits of [Petitioner's] appeal of his removal order; a neuropsychological evaluation; medical records; a letter and certificate confirming [Petitioner's] attendance at a Christian prayer group in detention; and several articles about the COVID-19 virus and the risk to certain individuals in immigration detention. . . .

In opposition, [Respondents] submitted:  a copy of the [immigration judge's] decision in removal proceedings and removal order, dated September 19, 2019; a court disposition and indictment for [Petitioner's] arson offense; and an FBI rap sheet. . . . The Court reviewed these documents in making its custody redetermination decision. . . .

The U.S. District Court for the Southern District of New York has determined that [Petitioner's] 20-month detention has been unreasonably prolonged in violation of his right to due process under the Fifth Amendment of the U.S. Constitution.  See [Arana v. Barr, No. 19 Civ. 7924 (PGG), 2020 WL 1659713, at *6 (S.D.N.Y. Apr. 3, 2020)].  The U.S. District Court ordered that the government produce [Petitioner] before an [immigration judge] by April 7, 2020, for an individualized bond hearing or release him on his own recognizance that day.  Id. at *8.  The U.S. District Court also placed the burden on the DHS at any such bond hearing to "'demonstrate by clear and convincing evidence that [Petitioner] poses a risk of flight or danger to the community.'"  Id. (quoting Dukuray, 2018 WL 5292130, at * 5).  This Court also "must consider less restrictive alternatives to detention as well as [Petitioner's] ability to finance any bond, and [Respondents] will bear the burden of justifying [Petitioner's] continued detention by clear and convincing evidence."  Id. at *7. . . .

In the instant case, after weighing all evidence presented, the Court concludes [that Respondents have] met [their] burden to demonstrate by clear and convincing evidence that [Petitioner] is a danger to the community.  As an initial matter, the Court recognizes the [Petitioner] has been detained for about 20 months.  Nevertheless, the Court concludes that the government has met its burden to show that the continued detention of the [Petitioner] is justified.  It is

necessary to serve a compelling regulatory purpose:  minimizing a risk of danger to the community.  See Demore v. Kim, 538 U.S. 510, 518- 21 (2003).

[Petitioner], as well as the public, have a due process right and a right to be protected from any danger to the community.  The Court considers it too great a risk to release [Petitioner] to the public given his criminal record.  The Court has found [that Petitioner's] serious criminal history shows he poses a danger to persons or property.  On April 2, 2015, [Petitioner] was arrested for arson.  On November 9, 2016, he was convicted of "Attempted Arson 3rd Degree" in violation of New York Penal Law Section 110-150.10.00.  On March 20, 2018, he was sentenced to five years of probation.  The criminal indictment alleges that "Pedro Arana, on or about April 2, 2015, in Suffolk County, New York, intentionally damaged a building, by starting a fire or causing an explosion."  In the September 19, 2019 [immigration judge's] decision, the summary of testimony states:

> [Petitioner] credibly testified that he began a fire in a home by setting fire to his bed because he intended to kill himself and that at the time he started the fire, he knew that the owner of the home was upstairs in the living room.  [Petitioner] could not cope with the flame and the room filled with black smoke, so he went upstairs and told the owner of the house to call the fire department.

The Court finds the nature and underlying facts of this crime to be very serious.  Cf. Santana v. Holder, 714 F.3d 140, 145 (2d Cir. 2013) ("Fire is a powerful weapon – easy to wield, capable of overwhelming destruction, and difficult if not impossible to control."); Matter of Palacios-Pinera, 22 I&N Dec. 434, 437 (BIA 1998) (noting that "the intentional starting of a fire or causing an explosion" involves a substantial risk to property and other people).

The Court has also considered the evidence related to [Petitioner's] medical and physical health.  In particular, a neuropsychological evaluation shows diagnoses of Unspecified Neurocognitive Disorder, Posttraumatic Stress Disorder, and Major Depressive Disorder, Severe, with Psychotic Symptoms, in partial remission.  The evaluation recommends outpatient psychiatric treatment to address his symptoms.  Also, the evaluation also states [that Petitioner's] anxiety and depression may have developed in response to his experience as the victim of a sexual assault.  [Petitioner] has been taking medications, including antidepressants.  He no longer hears voices.  A letter from a Forensic Social Worker states [that Petitioner's] "prolonged detention continues to negatively impact his overall health, both physical and mental" and confirms this social worker would assist [Petitioner] in accessing medical and mental health issues, should he be released.  [Petitioner's] son Marcos is also prepared to support [Petitioner] if released.  However, the Court finds this evidence does not show rehabilitation or sufficiently mitigate the serious nature of [Petitioner's] felony

conviction for arson, a crime that poses a high risk of danger to persons and property.

Moreover, [Petitioner] was convicted in 1996 of Driving While Intoxicated (DWI). Though this crime occurred over 20 years ago, the Court finds that "[d]riving under the influence is a significant adverse consideration in bond proceedings." Matter of Siniauskas, 27 I&N Dec. 207, 209 (BIA 2018); see also Begay v. United States, 553 U.S. 137, 141 (2008) ("Drunk driving is an extremely dangerous crime."). The Court considers this offense, along with [Petitioner's] more recent and more serious offense of arson, in finding that [Petitioner] poses a danger to the community.

Further, this Court has considered alternatives to detention. In some cases, alternatives to detention might adequately serve legitimate government interests in lieu of detention. See, e.g., Reid v. Decker, No. 19 Civ. 8393 (KPF), 2020 WL 996604, at *12 (S.D.N.Y. Mar. 2, 2020) ("[T]he IJ must meaningfully consider alternatives to imprisonment, including but not limited to release on recognizance, parole, or electronic monitoring."). However, under the circumstances in this case, this Court does not consider [Petitioner] to be a suitable candidate for any alternative to detention, given the weight of his criminal convictions and in particular, the more serious offense of arson. The Court has found [Petitioner] poses a risk of danger to the community. In light of [Petitioner's] significant criminal history, there is no plausible, less restrictive alternative to detention that would reasonably serve the government's interests while minimizing the risk of danger to the community. . . .

In sum, the Court concludes the DHS has met its burden to demonstrate by clear and convincing evidence that [Petitioner] poses a danger to the community. Therefore, the Court denies [Petitioner's] request for a change in custody status. [Petitioner] will be held throughout the remainder of his removal proceedings.

This Court has worked diligently to reach a decision in this case and within the deadlines set by the Federal District Court. Additionally, this Court has worked to comply with the requirements of the Federal District Court's order. This Court did not and does not view the Federal District Court's order as requiring a specific outcome or requiring that the [Petitioner] be ordered released by this Court. This Court understood the Federal District Court order was for the Immigration Judge to hold a bond hearing under the conditions and deadlines set by the Federal District Court. This Court reviewed the case on April 7, 2020. This Court again reviewed this case in formulating a written decision. In good faith, this Court respectfully believes this decision to be the correct decision based on this Court's understanding of the facts and law of this case.

(Apr. 15, 2020 Immigration Judge Order (Dkt. No. 44-1)) at 3-7 (record citations and

footnotes omitted))

E.     **Parties' Supplemental Submissions**

In an April 16, 2020 letter, Petitioner contended that Judge Sardelli's written decision is "a post hoc rationalization" to support Respondents' "litigation objectives."  (Apr. 16, 2020 Pet. Ltr. (Dkt. No. 45) at 1)  Petitioner urged this Court to disregard Judge Sardelli's written decision (id.) or, in the alternative, to permit supplemental briefing.  (Id. at 1 n.1)  The Court thereafter set a schedule for the parties to submit supplemental briefs addressing Judge Sardelli's written decision.  (Order (Dkt. No. 46))

In his supplemental briefs, Petitioner contends that Judge Sardelli (1) failed to apply the "clear and convincing" standard, given that he found that Petitioner was a danger to the community based on arson and DWI convictions that "resulted in terms of probation rather than any custodial sentence"; (2) improperly relied on Petitioner's 25-year-old DWI conviction; (3) improperly placed the burden of proof on Petitioner; and (4) did not substantively consider alternatives to detention, given that his "statements on this issue [were] conclusory and bereft of any individualized analysis."  (Pet. Supp. Br. (Dkt. No. 47) at 4-14; Pet. Supp. Reply (Dkt. No. 49) at 8-11)

In their supplemental brief, Respondents argue that Judge Sardelli fully complied with this Court's April 3, 2020 order:  he held a bond hearing by the April 7, 2020 deadline; he placed the burden on Respondents to demonstrate by "clear and convincing" evidence that Petitioner poses a risk of flight or a danger to the community; and he considered alternatives to detention.  Respondents contend that Petitioner's arguments amount to mere complaints about how the immigration judge weighed the evidence – a strategy that is prohibited under 8 U.S.C. § 1226(e).  (Resp. Supp. Br. (Dkt. No. 48) at 7 n.3, 13-16)

12

## DISCUSSION

## I.      LEGAL STANDARD

"In reviewing [a] motion to enforce, 'it is important to emphasize that the Court's task is narrow:  it is to determine whether Respondents complied with [this Court's order], not to review the hearing evidence de novo." Medley v. Decker, No. 18-CV-7361 (AJN), 2020 WL 1033344, at *2 (S.D.N.Y. Mar. 3, 2020) (quoting Blandon v. Barr, --- F.Supp.3d ----, No. 6:18-cv-06941 (EAW), 2020 WL 465728, at *4 (W.D.N.Y. Jan. 22, 2020)) (emphasis added, internal alterations omitted).  A district court must be "'mindful of [its] obligation to afford . . . a degree of deference to the factfinder's determinations,'" id. (quoting Hechavarria v Whitaker, 358 F. Supp. 3d 227, 240 (W.D.N.Y. 2019) (internal alterations omitted)), and "'not to overstep [its] bounds and set aside an immigration judge's bond determination on discretionary or evidentiary grounds.'" Id. (quoting Nguti v. Sessions, No. 16-cv-6703, 2017 WL 5891328, at *2 (W.D.N.Y. Nov. 29, 2017)).

"The key inquiry in determining whether the Immigration Judge complied with the Court's Order is whether . . . the Immigration Judge 'relied upon proof that could not possibly establish by clear and convincing evidence – as a matter of law – that Petitioner was a danger to the community.'" Id. (quoting Blandon, 2020 WL 465728, at *3) (emphasis in Medley).  "[C]lear and convincing evidence . . . means something more than preponderance of the evidence, and something less than beyond a reasonable doubt." United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985) (internal quotation marks omitted).

This Court's April 3, 2020 Order is, in effect, a conditional grant of the petition for a writ of habeas corpus.  Given that Petitioner had been held in custody for more than twenty months, the Court concluded that the Constitution required that he receive a bond hearing.  The

Court set a deadline of April 7, 2020 for the bond hearing to occur, failing which Petitioner was to be released.  (Apr. 3, 2020 (Dkt. No. 28) at 17-18) see Fernandez Aguirre v. Barr, No. 19-CV-7048 (VEC), 2019 WL 4511933, at *3 (S.D.N.Y. Sept. 18, 2019) ("A conditional grant occurs when a court finds that 'a constitutional infirmity justifies [the] petitioner's release' but, as an 'accommodation[]' to the Government, the court 'provides the [Government] with a window of time' to 'cure the constitutional error' before release is ordered.") (quoting Phifer v. Warden, Terre Haute Ind., 53 F.3d 859, 864-65 (7th Cir. 1995)) (alterations in Fernandez Aguirre).

The scope of this Court's review of the immigration judge's decision is quite narrow.  Federal district courts are generally barred from reviewing immigration judge's bond determinations.  Title 8, U.S.C. § 1226(e) provides that

> [t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review.  No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e).

District courts, however, "retain[] jurisdiction to review the Government's compliance with the conditional grant, that is, to determine whether the Government properly cured the identified constitutional error."  Fernandez Aguirre, 2019 WL 4511933, at *3-4 ("[A]lthough [8 U.S.C. § 1226(e)] forecloses review of a challenge to an [immigration judge's] discretionary determinations, the provision does not preclude review of claims of constitutional infirmity in the procedures followed at a bond hearing.").  "If the Government fails to cure the error, the court may grant the petition in full and order the Petitioner's release."  Id.; see also Hechavarria, 358 F. Supp. 3d at 235 ("[C]onditional writs 'would be meaningless' if a habeas court could not determine compliance with them. . . . [A] federal court always retains jurisdiction to enforce its lawful judgments, including habeas judgments, and the court has the authority to

14

see that its judgment is fully effectuated. . . . In other words, this Court retained the power to

grant release if the government failed to comply with [its] order.") (internal citations, quotation

marks, and alterations omitted).

## II.   <u>ANALYSIS</u>

This Court concludes that Respondents fully complied with the April 3, 2020

Order (Dkt. No. 28).  At the April 7, 2020 bond hearing, Judge Sardelli "'reviewed the evidence,

heard arguments from both sides, and came to a legally permissible conclusion in light of the

available evidence.'"  <u>Medley</u>, 2020 WL 1033344, at *3 (quoting <u>Apollinaire v. Barr</u>, No. 19-

CV-6285-FPG, 2019 WL 4023560, at *3 (W.D.N.Y. Aug. 27, 2019)).  Judge Sardelli's April 15,

2020 written decision makes clear that he (1) required Respondents to prove by "clear and

convincing" evidence that Petitioner's continued detention was necessary to protect the

community; and (2) considered alternatives to detention.[6]  (Apr. 15, 2020 Immigration Judge

Order (Dkt. No. 44-1))

As to burden of proof, Judge Sardelli's written decision repeatedly acknowledges

that Respondents have the burden of proving by "clear and convincing evidence" that Petitioner

is a flight risk or a danger to the community.  (<u>Id.</u> at 1-3, 5)  After reviewing the evidence, Judge

Sardelli concluded that Respondents had "met [their] burden to demonstrate by clear and

convincing evidence that [Petitioner] poses a danger to the community."  (<u>Id.</u> at 5)

---

[6]  Petitioner urges this Court to disregard Judge Sardelli's written decision, arguing that it is a
<u>post hoc</u> rationalization of his oral ruling, which did not comply with this Court's April 3, 2020
Order.  (Apr. 16, 2020 Pet. Ltr. (Dkt. No. 45); Pet. Supp. Br. (Dkt. No. 47) at 5 n.1)  Petitioner
also suggests that it was somehow improper for Judge Sardelli to issue a written decision.
According to Petitioner, immigration judges do not ordinarily issue detailed written decisions to
explain their oral rulings.  (Apr. 16, 2020 Pet. Ltr. (Dkt. No. 45))

Whatever the usual practice, there was nothing improper in Judge Sardelli issuing an oral ruling
followed by a detailed written decision.

Petitioner complains that Judge Sardelli afforded too much weight to Petitioner's arson conviction, but "'the weight'" that Judge Sardelli "'gave to particular aspects of the record'" is "'beyond the scope of this Court's jurisdiction.'"  Fallatah v. Barr, No. 19-CV-1032, 2020 WL 1887618, at *3 (W.D.N.Y. Apr. 16, 2020) (quoting Adejola v. Barr, No. 19-CV-00241 EAW, 2020 WL 994577, at *6 (W.D.N.Y. Feb. 14, 2020)).  Acknowledging that "criminal convictions cannot, on their own, satisfy the Government's clear-and-convincing-evidence burden," Blandon, 2020 WL 465728 at *5, Judge Sardelli did not deny bond simply on account of Petitioner's rap sheet and "the type of crime [Petitioner had] committed."  See id.  Judge Sardelli instead considered the circumstances of Petitioner's offense:  the fact that Petitioner had – in an effort to kill himself – started a fire in his bedroom, and thereby placed other occupants of the residence in danger, including the owner of the home, who at the time was upstairs in his living room.  (Apr. 15, 2020 Immigration Judge Order (Dkt. No. 44-1) at 4); cf. Blandon, 2020 WL 465728, at *5 ("[R]eliance on the type of crime committed by Petitioner, without more, is not sufficient to meet the clear-and-convincing-evidence burden."); Fernandez Aguirre, 2019 WL 4511933, at *6 ("[T]he [immigration judge] did not examine the facts underlying Petitioner's resisting-arrest conviction; the record contains no evidence at all of the conduct underlying that conviction.").

While acknowledging that Petitioner "has been taking medications, including antidepressants," and "no longer hears voices," Judge Sarelli concluded that "this evidence does not show rehabilitation or sufficiently mitigate the serious nature of [his] felony conviction for arson, a crime that poses a high risk of danger to persons and property."  (Apr. 15, 2020 Immigration Judge Order (Dkt. No. 44-1) at 4); cf. Blandon, 2020 WL 465728, at *5 (granting motion to enforce where immigration judge "only considered the seriousness of Petitioner's

criminal convictions without looking at . . . Petitioner's subsequent behavior").  Contrary to Petitioner's argument, Judge Sardelli did not "flip[]" the burden of proof when he balanced evidence regarding Petitioner's arson conviction against evidence regarding his current mental state.  (Pet. Supp. Br. (Dkt. No. 48) at 8) see Lantigua v. Decker, No. 17 Civ. 4880 (LGS), 2017 WL 5054567, at *3-4 (S.D.N.Y. Oct. 27, 2017) (immigration judge may assess "the totality of a detainee's prior criminal history" and has the "discretion to disagree with [a] [p]etitioner's arguments and weigh [the] [p]etitioner's prior convictions more heavily than his positive qualities").

　　　　　While Petitioner emphasizes that his arson conviction did not result in a custodial sentence (Pet. Supp. Br. (Dkt. No. 47) at 10-11), Judge Sardelli took this information into account.  (Apr. 15, 2020 Immigration Judge Order (Dkt. No. 44-1) at 4 (noting that Petitioner "was sentenced to five years of probation" for his arson conviction))

　　　　　Although Judge Sardelli found that Petitioner's DWI conviction was an "adverse consideration," he acknowledged that the "crime occurred over 20 years ago." (Id. at 4-5); cf. Blandon, 2020 WL 465728, at *5 (immigration judge's "bond determination decision shows he only considered the seriousness of Petitioner's criminal convictions without looking at the recency of the convictions. . . .").

　　　　　Finally, although Petitioner contends that Judge Sardelli did not consider alternatives to detention (Pet. Br. (Dkt. No. 47) at 11), his written decision belies that assertion.  The order notes that "alternatives to detention" – such as "'release on recognizance, parole, or electronic monitoring'" – "might adequately serve legitimate government interests in lieu of detention" in certain cases, but that Petitioner was not "a suitable candidate for any alternative to detention, given the weight of his criminal

convictions and in particular, the more serious offense of arson." (Apr. 15, 2020

immigration Judge Order (Dkt. No. 44-1) at 5 (quoting <u>Reid</u>, 2020 WL 996604, at *12);

<u>cf.</u> <u>Hechavarria</u>, 358 F. Supp. 3d at 242 (granting motion to enforce where the

immigration judge "said not one word about any alternative to detention"); <u>Fernandez

Aguirre</u>, 2019 WL 4511933, at *5 (granting motion to enforce where immigration judge's

ruling was "utterly [de]void of any discussion of . . . non-incarceratory measures, such as

home detention, electronic monitoring, and so forth").

       Because Respondents fully complied with this Court's April 3, 2020 Order,

Petitioner's motion to enforce that Order must be denied.[7]

## CONCLUSION

       For the reasons stated above, Petitioner's motion to enforce (Dkt. No. 29) is

denied. The Clerk of Court is directed to terminate the motion, terminate all other pending

motions as moot, and close the case.

Dated: New York, New York
      May 1, 2020

                  SO ORDERED.

                  _____

                  Paul G. Gardephe
                  United States District Judge

---

[7] Because this Court's task is not "to review the hearing evidence <u>de novo</u>," but instead to determine whether Respondents complied with the April 3, 2020 Order, the Court expresses no view on the merits of Petitioner's current detention and removal. <u>See</u> <u>Medley v. Decker</u>, 18 Civ. 7361, 2020 WL 1033344, at *2 (S.D.N.Y. Mar. 3, 2020) (emphasis added) (internal quotation marks and alterations omitted).